1-3-3-9-6-8. Percy Hutton versus Betty Mitchell. Arguments not to exceed 30 minutes per side. Mr. Benza for appellant. Good afternoon. May it please the court. I've already reserved five minutes for my rebuttal. I'd like to focus the discussion this afternoon to issue one and two in our brief. Of course, if the court has questions of the other issues, I'm happy to discuss those. The issue at point in assignment number one and then related in assignment number two is the failure of the trial court to instruct the jury at the sentencing phase what, in fact, were the aggravating circumstances that the jury was to consider in making the finding as to whether or not a death sentence was appropriate in this case. Issue number two addresses the issue of ineffective assistance of appellate counsel for failing to raise this issue in the direct appeal as well as the failure to raise the ineffective assistance of trial counsel for failing to raise the claim at the time of the trial. Because this has the issue of ineffective assistance of appellate counsel in it, it's clear that no Ohio court has ever resolved the merits of the underlying claim regarding the failure to give this the merits of the claim. And in order to evaluate the issue of ineffective assistance of appellate counsel, we must first resolve whether or not there were merits to the claim that counsel failed to develop and failed to raise. First, there is the Sixth Amendment issue under the Apprendi and Ring line of cases regarding the absolute necessity under the Sixth Amendment for a jury to make all predicate findings necessary to enhance a defendant's sentence. Second is the Fourteenth Amendment issue vested by the state law of Ohio in Mr. Hutton to have a liberty interest to have the jury make the specific finding of death eligibility by making the finding that aggravating circumstances outweigh the mitigating factors. And third is the Eighth Amendment issue of the untrammeled jury discretion that was given to this jury to make the sentencing decision. I understand that those are the three constitutional claims, but I want to sort of go to the end of those first and ask, what do we make of this notion of a cure by the appellate court conducting the weighing factors such that even if there was an error made and the trial judge not given that instruction, it's cured by the re-weighing of the evidence of the trial court, of the factors of the trial, I mean by the appellate court. By the appellate court, correct. Well, first off, the Ohio courts didn't actually engage in re-weighing in this particular case because they constantly have refused to address the merits of the issue. In fact, in Hutton's case in particular, the Ohio Supreme Court specifically said that all they were doing at their independent review was determining the sufficiency of the evidence of the aggravating circumstances. So if that, if they're determining sufficiency, can that be determined sufficiency other than by weighing? Well, sufficiency simply asks whether or not there was sufficient evidence for the jury to have made the finding had they been properly instructed. The problem that we have in this case is that they were never told what aggravating circumstances were in order to do that weighing, and Ohio statute is very clear. Ohio statute is very clear. If there is a jury finding that the aggravating circumstance of the case outweighs the mitigating factors, then there must be a life sentence. And that's exactly the issue that is at play under the Sixth Amendment in Ring and Apprendi. That absent that very specific jury finding that the aggravating circumstances, either the kidnapping or the course of conduct, the attempt killing or attempting to kill two or more people, outweighed the mitigating factors in this case, the death sentence was not an option. The maximum possible sentence prior to that jury finding was a life sentence. So you needed the issue to be resolved by the jury both under the Sixth Amendment, under the Fourteenth Amendment as a matter of state law, and then also under the Eighth Amendment under Furman and Gregg. That this jury, in essence, was told exactly what the court found not to be a Fourteenth Amendment problem in the Gotha, but to be a Furman problem of untrammeled jury discretion, this jury was told to go back into the jury room, consider anything that they wanted to consider, and decide what to do with Mr. Hutton. And in fact, at the only time that this jury had any idea what a jury instruct, or what the aggravating circumstance was, was during the prosecutor's closing argument. The prosecutor told the jury, then you have to decide how much weight you are going to give to the aggravating circumstances of the crime. In doing that, you take a look at the surrounding facts and circumstances, just as we talked about in the first phase. Judge Merritt, do you have a question? Yes, the Rang case apparently is not retroactive. That is, Rang came 15 years after or so this would we apply the Rang doctrine that the matter can only be decided by the jury to this particular case? Because Mr. Hutton's direct appeal of right was not completed until 2003, when the Ohio Supreme Court decided his direct appeal, Apprendi was decided in 2000, Rang was decided in 2002. So those cases clearly apply as clearly established federal constitutional law, established by the Supreme Court, at the time that the Ohio Supreme Court rendered its final judgment on the direct appeal. So both under Teague, when the Supreme Court appeal of Mr. Hutton was decided in 2004, but under the anti-terrorism application of the timing, Rang and Apprendi were valid, clearly established constitutional law by 2003, when the Ohio Supreme Court decided the direct appeal. So those two cases do directly apply to this case, and it is through those lens that we have to evaluate the decision. I'm confused because I thought the direct appeal, when they sent it back for a reconsideration back to the trial, at the trial court, but the Court of Appeals for it to be re-weighed, three of the judges dissented, saying that this was plain error, your point, the point you were making was plain error and would have reversed the case, but four of the judges in 1990 just sent it back to be concluded with respect to a re-weighing process. So that was the direct appeal, at least the first one. You're correct, your honor, but that was only the first direct appeal. The case was still on direct review when it was returned to the Court of Appeals for the re-weighing, for the review of the sentence. It then, the appellate lawyer died after the case was taken back to the Ohio Supreme Court. It wasn't until an execution date was set that people realized that Mr. Hutton had no lawyer, and so at that point, the lawyers petitioned for a delayed appeal of the direct appeal to the Ohio Supreme Court, and another set of lawyers filed an application for re-opening. That became the conclusion of his direct appeal in 2003, for purposes of the applicable law that was to be decided. As to the merits of the claim, on the Sixth Amendment issue, it's very clear that the jury never made the predicate finding that the aggravating circumstance in this case outweighs the mitigating factors, and absent that finding, there is no possibility for any Ohio court to then go back and fix that error, because in a way, it is a jurisdictional error that has occurred. That the appellate courts have no authority to impose a sentence, absent that particular jury finding. The Ohio Court of Appeals did not determine that the statutory aggravating circumstances outweighed the mitigating factors? They did. They did? They did. Isn't that a weighing? That is their independent review of the sentence. Again, the predicate requirement, before you get to the appellate court's review of that, is the jury finding in its first instance. The jury found all of the relevant aggravating circumstances, though, right? They did. They found two aggravating circumstances, at the guilt phase. So they found, so it wasn't like the Ohio court was weighing aggravating factors that had not been found by the jury? No, and that isn't the issue that we are presenting to the court. Well, I'm trying to figure out what it is. The issue is there is a second jury finding that must be made in Ohio capital cases. It isn't enough for the jury to simply determine that there are aggravating circumstances. That's the guilt innocence phase decision. The jury is required to make an additional finding at the sentencing phase that the specific aggravating circumstance of the case outweighs beyond a reasonable doubt. How is your argument consistent with the Hoffner case? Well, there are two issues. First, Hoffner came to the court with procedurally defaulted ineffective assistance of appellate counsel. This case does not have defaulted ineffective assistance of appellate counsel. So that's the main reason Hoffner lost, was that his appellate counsel ineffectiveness was procedurally defaulted for federal court review. Mr. Hutton's was not. The Court of Appeals analysis in Hoffner was dictum? Yes, it is. The court specifically says this issue is defaulted and we are not going to review it. In the alternative, even on the merits, it will lose. But again, even on the merits, Hoffner was subject essentially to harmless error review. And the biggest difference between Hoffner and Hutton's case is that in Hoffner, the jury heard no other evidence at the sentencing phase except for the aggravating circumstance evidence. In Hoffner's case, a huge amount of evidence that should not have been in front of the jury and could not be considered at the sentencing phase as an aggravating circumstance was given to them. And there were two primary areas. First and foremost is the alleged rape of Eileen Sweeney. Well, that's sort of hooking in the other issue then. Absolutely. But every court that... Would you win on this issue if you win on the other issues? Yes. The issue with Eileen Sweeney is twofold. First is its own impact at the sentencing phase or at the trial phase as to whether or not the jury found him guilty because of that improper evidence. And every court that has reviewed this, every state court that has looked at it has agreed that any evidence about an alleged rape of Eileen Sweeney for which Mr. Hutton was subsequently acquitted of should not have been presented to that jury. So everybody has agreed that that should not have been there. You're not basing it on the subsequent acquittal, can we? No, the courts did not base it on the subsequent acquittal. Well, you're asking us to look at that. Does that make it unconstitutional because he was acquitted later of the previous... No, the constitutional violation occurred prior to him being tried. The courts all looked at it in the vacuum. So you can't say whether it was a constitutional violation or not depending on what happened later. No. It just goes to the issue of the jury is considering evidence or could have considered evidence at the sentencing phase that actually is a false precept. That is, that they were considering the fact that he had raped Eileen Sweeney. By itself, the fact that he's acquitted does not make it proper or improper. It was improper in and of itself. It was improper in and of itself regardless of the outcome of the subsequent trial. I'm sorry, I thought I heard something coming in. Go ahead. So what makes it improper is there is no valid reason under the Ohio Rules of Evidence for that testimony to be submitted. That's an Ohio State determination. Correct, but the evidentiary... Another state could have another rule that would not be unconstitutional. That's correct. And the substantive issue of Eileen Sweeney is raised as a due process violation in our case. Sorry, say that again. The substantive issue of the admission of Eileen Sweeney's testimony is the assignment number 3 in this case is raised as a due process violation of Mr. Hutton's... Raised as a due process violation. It wasn't below, it wasn't by the state court. It didn't say that it was a due process violation. No, they found it inadmissible as a matter of state law. For you to get relief on that issue, you'd have to show that it was a constitutional violation, not just a state court violation. Correct. And has the state forfeited that issue, or if we find that troublesome, we can reach that issue? You can reach that issue because the state courts never addressed it. Then I wonder how it's a constitutional violation to violate the state law of omitting evidence that the state went through a five-part analysis saying in the end it was not relevant, that another state with another law of evidence might not have come to the same conclusion. Then it would not be a due process violation, right? Not in that state. But once the state decides that evidence should not be admitted... Then it's a constitutional violation to omit evidence that's in violation of the state evidence code? If it is severe enough, it can result in a due process violation of the defendant. But when it can, it can. I can't see how when you say it's clear enough, it becomes a due process violation, but in another state, the same determination would not be a due process violation. A due process violation is not driven by the state evidence code, is it? In a way, yes. That seems to be in case. Let me ask you, since you said that this could rise to the level, and indeed I think you argued that it did rise to the level of a constitutional violation, what is it about the admission of this evidence, prejudicial as it may have been, elevated it to a constitutional violation under the facts of this case and the circumstances of this case? There are two places where it would rise to the level. First is the issue at sentencing, and that's the failure to give the jury instructions about what aggravators were. The prosecutor specifically argued to the jury at the sentencing phase to consider the conduct that he engaged in with Ms. Sweeney, the rape of Ms. Sweeney. That's clearly an improper consideration for the jury. So the improper admission of that evidence could have been used by the jury as an aggravating circumstance to be used to sentence Mr. Hutton to death. But do we know, I mean, we know they sentenced him to death, but as I said, even though you argued that was admissible, that was prejudicial, is that enough here under this case to make it a constitutional violation? It is our submission that it does. You said there were two instances. What's the other one? Then the other is its impact at the guilt phase. So there were two places. Or was it admitted? It was admitted during the guilt phase of the proceeding. Either it was constitutional to admit it or it wasn't. I mean, it can't be, oh, it was constitutional but it wasn't constitutional. You can only either admit it or not. You can't have two realities, right? The Constitution either allowed it to be admitted at that time or it didn't. Is that right or wrong? Right. It's inadmissible either way. But the remedy may differ. Either way or both ways. If you couldn't admit it because it might affect sentencing, then you couldn't admit it then. If you could admit it then, whatever effect it has later, you can't erase it from the jury's mind. Exactly. You have trouble understanding the reality of how that would work. Well, the issue then becomes if it is a violation, then what is the remedy? And there may not be a remedy. I understand you might have different remedies. Correct. But still the judge has to determine, admit it or not. He can't say, well, I'm going to admit it for this reason but not for that reason. That is correct. So I'm having trouble seeing why it couldn't be admitted constitutionally for guilt purposes. That's my question. Again... Apart from whether that might affect the jury later, and you can talk about that. Right. But at this point, if it's admissible constitutionally for guilt purposes, then the court has not violated the Constitution by admitting it. And I would direct the court to Ohio v. Roberts where the violation that happened during the trial was a violation of state law that then rose to the level of denying the defendant his due process rights to a fair trial because of the magnitude of the evidence that was submitted to the jury. That's the exact argument that we have in this case. That once the jury heard all of this evidence that everybody agrees should not have been presented to the jury... Under state law. Then the jury was at great risk of losing its way through the decisions in this case and deciding either guilt-to-innocence based on the allegations of rape with Ms. Sweeney or in sentencing him to death because of using the rape of Ms. Sweeney as an aggravating circumstance. Had the jury... Again, this is why all of these issues dovetail back to the first and second issue. Had the jury been properly instructed that the only thing they were to consider at sentencing phase was either the killing or attempting to kill of two or more people, aggravating circumstance, or the kidnapping as an aggravating circumstance, then the issue of the rape of Ms. Sweeney would not be before the court because the jury would have been told not to consider it. This is the exact same issue that was presented... Judge Merritt? Yes. Do you want to argue about the procedural default issue at the sentencing phase, that is to say that it is not a bar to consideration of the Gregg instruction, Eighth Amendment claim as a result of cause and prejudice? You make that argument in your brief. If we should decide that you've got a problem with applying brain and the more recent Supreme Court case because of the retroactivity problem, you've got an alternative argument based on cause and prejudice as I understand the case. Is that right? Yes, that is correct because the first appellate lawyer did not raise this issue on the direct appeal to the Ohio Supreme Court. So it is defaulted in that regard. The three justices on the Ohio Supreme Court did decide this claim on the basis of Gregg, that this was not channeling the jury's discretion. However, the majority in that case specifically did not and refused to consider the merits of that claim because it had not been raised. But a timely and proper filed application to reopen, which is Ohio's mechanism to allege ineffective assistance of appellate counsel, was presented to the Court of Appeals and was appealed and adjudicated on the merits by the Ohio Supreme Court. The Ohio Supreme Court simply determined that this was a strategic decision to not raise this issue because trial counsel had not objected. They did not, however, address the prejudice problem. So the first issue is whether or not the Ohio Supreme Court decision that this was a strategic decision, therefore not deficient performance, was an unreasonable application under the anti-terrorism bill. And the judgment and the reasoning of the Ohio Supreme Court was well that appellate counsel had raised other more meritorious issues. And a review of the issues raised in the Ohio Supreme Court by the first appellate counsel revealed that there was, in fact, no winnowing or narrowing of the issues because he raised multiple issues that the Ohio Supreme Court simply dismissed in one sentence saying, we have previously decided all of these issues, these issues are without merit. So you can't look at it and say, well, they must have made a strategic decision not to raise this claim because he's raising claims that have even less merit to them. Yes, Judge. Judge Merritt, do you have a question? No. So your claim is that there is cause and prejudice for the procedural default. Correct. Therefore, we should reach the merits of that issue. Correct. That's the bottom line. Yes. And if you find cause and prejudice to lift the default, then because the Ohio courts have never adjudicated this claim on the merits, Mr. Hutton is entitled to de novo review of the merits of this claim. And on the merits, do you just simply agree with the three judges in dissent about the Greg problem, right? That's the bottom line there. As the Eighth Amendment issue, yes, there was still the Sixth Amendment and also the Fourteenth Amendment under Hicks v. Oklahoma that Ohio law vested with Mr. Hutton the liberty interest in having the jury make this finding. So there are three avenues by which this court should be reviewing the failure to instruct this jury properly. The end result of this is that Mr. Hutton now sits on death row all these years later, never having a jury make the decision that the aggravating circumstances outweigh beyond a reasonable doubt the mitigating factors, and without having a majority of any of the judges on the Ohio courts review the merits of that particular claim. And that's why we ask this court to lift the procedural default, find cause and prejudice for the failure of a claim. Do you have the Ohio court identifying the proper aggravating factors and saying that they outweigh the mitigating factors? Yes, in their independent review. But again, they preface their review by simply saying, we are looking at the sufficiency of the evidence to see if the jury's finding is supported by the evidence. There are no further questions. I'll reserve the rest of my time for rebuttal. Thank you. Good afternoon, Your Honors. Catherine Mullen on behalf of Warden Beverly Mitchell in this case, urging that this court affirm the district court's denial of Habeas relief. If I'm going to focus my argument on the first two assignments of error, which both deal with the trial court's alleged failure to define aggravating circumstances, I'd first note that the issue that Mr. Benza has conceded, which is that the trial court failed to define aggravating circumstances, that issue was never presented to a state court. It was only presented to the state court via an ineffective assistance of appellate counsel claim through a Murnahan motion, which is how the Ohio Supreme Court decides applications to reopen and claims of ineffective assistance of appellate counsel. I would argue, Your Honor, as the district court found, that the claim that the trial court did not define aggravating circumstances is procedurally defaulted and is barred. What about the claim that there was ineffective trial counsel in not raising this issue? The claim that there was ineffective trial counsel was raised, again, through the Murnahan claim. The Murnahan claimed that appellate counsel was ineffective, both because they should have raised that the trial court should have defined aggravating circumstances and that trial counsel should have objected to the court's failure. The second one is the stronger one for them. Correct, Your Honor. The Ohio Supreme Court did decide these issues. The Ohio Supreme Court, deciding the ineffective appellate counsel claim, found that they applied Jones v. Barnes, which we know is the leading case in the United States Supreme Court on ineffective assistance of appellate counsel, and Strickland, of course. And they applied those cases to find that the claims that the defendant or the claims that Percy Hutton is arguing now were not clearly stronger than the claims that appellate counsel had raised on appeal. In fact, some of the claims that they had raised didn't get them anywhere, and this one might get them somewhere. Well, the claims that appellate counsel did raise actually did get him somewhere in the district appellate court, and then the Ohio Supreme Court reversed it. But the new claims didn't get him anywhere, primarily because the appellate courts do conduct an independent re-weighing pursuant to Revised Code 2929.05. That happened here. I'm sorry. Oh, I'm sorry, Judge Merritt. I'm sorry. What exactly is the argument that this claim is no stronger than other claims that were made, and somehow that has something to do with the cause and prejudice standard? I don't understand what exactly the strength of the other claims has got to do with the strength of this claim and whether this claim is subject to cause and prejudice analysis. Absolutely, Your Honor. So the way the relationship between those two issues is that Percy Hutton is trying to claim cause and prejudice through ineffective assistance of appellate counsel to reach the merits of his claim that the trial court failed to define aggravating circumstances. In doing so, he has to, as I said, claim that appellate counsel was ineffective for failing to raise that issue. Now, the Ohio Supreme Court did review the claim that appellate counsel was ineffective for failing to raise this issue, and in doing so, the Ohio Supreme Court properly applied Jones v. Barnes and the analysis there, which requires courts to look at whether or not the claim that appellate counsel did not waive was stronger than the other claims or could have been stronger than the other claims that they did present. So that would be the relationship between the cause and prejudice analysis and the ineffective assistance of appellate counsel. And because, as the district court held, the appellate counsel was not ineffective for deciding not to raise these claims, there is no cause and prejudice to overcome the default for failure to object to or to raise the claim that the trial court failed to define aggravating circumstances. How that is related, the fact that other claims are, somebody thinks, stronger or weaker, how that should affect whether there is cause and prejudice for the failure to raise and to procedurally default this claim. I don't see why some other two or three claims, either being stronger or weaker, has anything to do with cause and prejudice about this claim. That's my problem. Well, the Jones v. Barnes test requires the court to determine whether or not claims are stronger or weaker. That's the analysis that's applied to an ineffective assistance of appellate counsel claim. And because the Ohio Supreme Court found that these two claims were not stronger than the claims that appellate counsel did raise on appeal, they found that appellate counsel was not ineffective, and therefore you don't have the cause and prejudice to excuse the defaults of his first issue, which is that the trial court failed to define aggravating circumstances. What analysis did the court go through in determining that this claim was not as strong as those alleged by appellate counsel? And then is there any other way for the petitioner to actually get this claim before the court for that determination if, in fact, he can't do it through appellate counsel? The Ohio Supreme Court, in their decision, they reviewed the other claims that were presented to come to that conclusion, and they did so consistently with Jones v. Barnes. I cannot think of another way that he would have gotten it in since he did fail both to object, which means it would have been reviewed under plain error, and then, of course, appellate counsel did not raise that issue in his direct appeal process. So when we say he didn't object, his trial counsel did not object to that, and this is one of the things he's saying was ineffective because the court never instructed the jury on mitigating versus aggravating or what the aggravating factors were. Correct, Your Honor. His argument was twofold, that the trial counsel should have objected to the failure for the trial court to define aggravating circumstances and that the court itself had failed to define aggravating circumstances. That's a pretty serious issue, isn't it? It is a very serious issue, and it's one that's been decided by the U.S. Supreme Court and Clemens. The Clemens decision has been followed by this court in multiple cases, most recently being Hofner, which I've cited in my brief, but also in McGuire, Bastin, Cooey. I don't know if it's related to Judge Donald's question, but my question is was there a discussion of what the proper aggravating circumstances were in the arguments to the jury? There was. Counsel, the prosecutor, did argue the specifications, which constituted aggravating circumstances. Did he say these are the ones that caused? He discussed. Not that he raised them. I think he termed it. Something from which you would think the counsel for the defendant would have said the only ones you can look at are these, this, this, and this. Did not or did? I know that the prosecutor did. I don't recall if the defense attorney did, but I know the prosecutor did, I believe, to use the term mass murder, which is the vernacular for the course of conduct specification in Ohio, also the felony murder since there was the underlying kidnapping, both of which qualified Mr. Hutton to be capital eligible. Yes. This is a related but different question. As I understand your opposing counsel seems to be arguing or appears to be arguing that the re-weighing isn't sufficient because there's state law which requires that the jury do the weighing rather than the re-weighing of the appellate court. Under Ohio state law, the jury is required to do the initial weighing, which is to find that aggravating circumstances outweighed. How can they do that if they don't know what the aggravating circumstances are? Because even though the trial court didn't define aggravating circumstances, the trial court did state that the jury had defined that the aggravating circumstances outweighed the mitigating factors, and in doing so it was clear to the jury who had found Hutton guilty that the counts that we were looking at were they contained a firearm specification, the course of conduct specification, and the felony murder specification. Did the court just take judicial notice that the jury understood what the aggravating factors were? Because if there is no instruction in the court, of course the trial court has to instruct the jury on the law. Absent some instruction, how do we know what the jury relied on in deciding what those factors were? Absent an instruction. Let me just get this in. Also, you mentioned before the Clemens case, but isn't this case distinguishable from Clemens? It doesn't factually mirror Clemens, but Clemens clearly states that if the trial court, if a court improperly defines aggravating circumstances, then the independent reweighing conducted by the state courts can overcome that improper definition. In Clemens, they relied on an invalid aggravating factors, and here, since there was no instruction, we really don't know what they relied on. Well, the jurors are not required to specify their findings, only that the aggravating circumstances outweigh the mitigating factors, so they don't have to state with specificity what their basis for their reasoning was. And we know from Clemens that if they had considered something erroneous, which I know Mr. Hutton has suggested maybe they imposed death because there was a firearm specification, if they had done something like that, that's what Clemens allows the independent reweighing. He also says that maybe they imposed death because of the evidence of a rape that they heard about, which was improperly, his words, admitted into evidence. Right, and that the evidence of the rape was, as the Ohio Supreme Court found, erroneously admitted, but they did find that it was harmless error in light of the other evidence that supported Mr. Hutton's conviction. It did not raise to a due process violation. Is the fact that it was harmless what keeps it from a due process violation, or do you have an argument that regardless of whether it was harmless, it was not a due process violation as opposed to a state that gets it? What I was asking your opposing counsel. I mean, isn't it possible that, I guess the first part of my question is, isn't it possible that even though it's a state violation, it's not a federal violation, and if a state allowed it, it wouldn't be a due process violation? That's the first part of my question. And the second part is, have you argued that? Yes, Your Honor. Where do you argue that? I think Estelle v. McGuire is the controlling case here. Estelle v. McGuire from the U.S. Supreme Court was an other acts case, which is what this rape evidence argument is. And in Estelle v. McGuire, the court noted, and this court has also held on repeated occasions, that it's exceptionally and extraordinarily rare for a state law evidentiary violation to rise to the level of a due process violation, and that is because it can vary. Your argument is that while it may be against state law to admit this, it's not against federal constitutional due process law to admit it,  Absolutely, Your Honor. Does the court support that, just the McGuire case? Yes, Your Honor, but there's plenty of cases. I didn't cite to them, but there's plenty of cases that have upheld and applied Estelle, including cases from this court. The Estelle case is interesting, and I think especially in this case, because what we're looking at here is evidence that Eileen Sweeney was raped shortly after the homicide, and shortly after Samuel Simmons, the surviving victim, was transported to the hospital. And the Ohio Supreme Court did find that it was erroneous, although they did let some of the statements that Mr. Huttman made during the rape stand as evidence. In the Estelle case, the defendant was on trial for abuse and offenses that occurred against his infant daughter, and the evidence that was admitted in Estelle were injuries that had occurred to her prior to that event, but were not necessarily even connected to McGuire. And in that case, the U.S. Supreme Court found that that was not a due process violation. So if we compare the facts in Estelle to the rape... Is that a child syndrome evidence? Correct. That was irrelevant, but the Supreme Court said it was not a due process violation to admit it. Correct, Your Honor. So if we apply and construe the facts in Estelle... Well, they did say it was relevant to show intent. They did, and the Ohio Supreme Court, even though they found that the rape evidence here was inadmissible, they did find that one of the arguments that the prosecutor had made at trial, but which was not carried forward in appeal, was that Hutton had potentially raped Eileen Sweeney in order to victimize her, to make her stay silent about the events of the homicide. Now, that was not carried forward in the appeal, and ultimately the Ohio Supreme Court said that that was not supported by the evidence, but they did note that had that been the case, that would have been a potential way to have this evidence be admissible. I think the defendant... I'm sorry. Percy Hutton has said multiple times that the jury didn't make a finding, and he relies on Ring and Apprendi and the more recent opinion of Hearst. Those cases are inapplicable. Here we have the jury making the findings. This case went to the jury. In Hearst, the most recent case that Hutton relies on in his reply brief, that had to do with a jury that only makes an advisory opinion to the trial court, and then the trial court is free to impose death or impose life as the court sees fit. That's not how Ohio law works. Here we have the jury make the finding. If the jury had not recommended death, it would have been completely off the table. The trial court could not have independently reweighed and imposed death on his own. So we do not have a Sixth Amendment Apprendi-Ring issue. We also don't have an Eighth Amendment issue, which we know clearly from the Clemens case. On that question, can I ask you, do you think we should say here in this case that the death penalty arose because it was restored or it was created afterward by the three-judge court in reweighing, or should we say that it was the jury that imposed the death penalty to begin with, and all that happened after that was it was reviewed so that the death penalty emanated from the jury verdict, which was simply reviewed, in which case there would be a problem, a greater problem perhaps, about the fact that there was no objection made to the fact that it was not explained to the jury, the jury was not given guidance about the aggravators and so on. How do you say we should look at it and characterize it, from the three-judge panel reweighing under Clemens or the original jury verdict? I would say the latter, Your Honor, that it should be reviewed as the jury made this finding. The jury did find Hutton guilty. The jury did find that the aggravating circumstances outweighed the mitigating factors. And then his sentence of death was independently reviewed both by the Ohio 8th District Court of Appeals and by the Ohio Supreme Court and upheld. The argument to the contrary, that the jury maybe didn't know what they were doing, I don't believe, first of all, is supported by the record, and second of all, I don't believe that that's supported by any of the case law, particularly clearly established precedent from the U.S. Supreme Court because I feel that this case should be decided under Clemens. Let me ask you this. If that's the case, it's directly from the jury verdict, why is not the three-judge minority in the Supreme Court of Ohio correct that this is just a flat-out violation of Greg B. George's, in which the Supreme Court said, look, the only way you can get the death penalty these days is to go back, have a bifurcated case, and laying it out about aggravators and mitigators and how that's supposed to be done. It seems to me that you've got a problem there because Greg is clearly a problem for you. I don't think that Greg is a problem here, though, because we do have the jury making a finding. What we don't have is that nice clarity that we would prefer that the trial court's jury instruction said specifically these are the specifications that you can consider. But we do have the jury making a finding. We don't have unfettered discretion because the class of defendants, and in particular Mr. Hutton in this case, was narrowed down. It wasn't this arbitrary decision that anybody could be subject to the death penalty. The jury had already found that he had committed this offense in the course of conduct of attempting to kill a second person, and also that he had committed this offense during the period of a kidnapping. So I don't think that we're in that Eighth Amendment range, which is why I think that Clemens is appropriate and on point here because, at most, we could say that the jury potentially considered something improper, which Clemens allows an appellate court reweighing to correct. As Mr. Hutton has not decided to argue the remaining issues, I won't either, unless this court has any questions. I have a question about the rape evidence issue. But on further consideration, I think you addressed it. Do you have a question? Yeah, I do. I wanted to ask you about the Brady issues. I know that the court basically said that, for example, where the prosecutor withheld the statement of a particular witness and that that was harmless, and they talked about the prosecutor's obligation to provide exculpatory evidence, even if there was not a specific request. And here, there were a couple of those instances. I just want you to comment on what we should or should not do with that. Absolutely, Your Honor. So the Brady claims at issue here, which are the Bruce Holloway statement to the police, which admittedly was not disclosed and should have been by the prosecution, and the Kim Lampkin statement, basically just a denial on her part that she had any knowledge of the offense. Those two issues, the district court found, were procedurally defaulted because they were not previously raised. Now, then applying Kiles v. Whitley and Brady itself, we look at the materiality of the evidence, and it's clear that the Bruce Holloway statement is very consistent with what his actual trial testimony was. The difference is that he claims that Hutton told him that both victims were involved in an illegal activity, and his police report statement only says that one of the victims was. I don't think that materially changes the outcome of the case, and especially because Mr. Holloway at all times had never stated that Hutton killed Mr. Mitchell. His focus was on Simmons, and his focus was on the fact that Simmons had allegedly gone out to do this information and that Hutton was looking for Simmons. So I don't believe that that is material, and I think that's supported by the district court. So when we look at the couple of Brady issues in there, you look at those of isolation, you know, the court said, yeah, it was a Brady violation, but it's not really material to affect the outcome. And then you look at the admission, the improper admission of the rape evidence, and you look at that in isolation, and that's not enough really. And then you look at the failure to give the instruction, which looking at it in isolation may not be enough. But don't all of these things, when you aggregate them, doesn't that really kind of strengthen this ineffective systems of counsel claim where these things were not raised? And how should that then influence the determination about whether or not all of these things aggregated give rise to this constitutional violation? Hutton did raise in his petition a cumulative error argument. The district court denied that argument, and he has not raised that issue to this court. So I would argue that the issues should not be looked at cumulatively. They should be looked at independently to determine if any one of which deserves habeas relief. And I would argue that none of them do. Thank you. Thank you. Two points. First is to the application of Clemens to this case. Clemens doesn't apply. Clemens applies in a situation in which a jury is properly instructed about what the aggravating circumstances are and make their sentencing determination. And subsequent to that valid determination at the time, one of the aggravating circumstances or several of the aggravating circumstances are declared invalid. And therefore, we have compliance with both the Eighth Amendment requirement and the Sixth Amendment requirement and the Fourteenth Amendment requirement that Mr. Hutton did not get. That is, his jury never was told what are the aggravating circumstances that they were to be considering. They were told the wrong ones. They were. The argument of the prosecutor. In Clemens, they were told the wrong ones. So we can remove... Not that were described to the jury. That's the difference. In Clemens, the jury was told... Well, the difference is we presume that juries follow their instructions. And when they are told to weigh aggravating circumstance, the first time they hear that term defined is in closing argument by the prosecutor. Ohio has this... You can't have reweighing to cure the wrong definition? You just can't have reweighing to cure non-definition? Correct. Because what we... The danger of non-definition is they might include some things that aren't included. The danger is... Well, the other danger is that they could have made the sentencing decision not based on the aggravating circumstance at all. Just because they weren't defined? That's correct. I'm not sure I follow that. You mean they might have included some that weren't supposed to be included? You don't mean that they might have omitted some of them? Absolutely. Because they were never told what to include. So it's entirely possible that that jury gets back into the jury room and says, what should we do with Mr. Hutton? And their discussion says, because he raped Eileen Sweeney, because he has been given all of these other breaks by the criminal justice system, we should sentence him to die. With no consideration whatsoever about what the valid aggravators that they could have been considering did to this particular case. Now, how do we know that that may have happened? This is analogous to Mills v. Maryland, which was a mitigation instruction case where the jury was at reasonable probability could the jury have misapplied their jury instructions. This is the same error, but the instruction issue goes to the aggravating circumstances in this case as opposed to the mitigating factors in Mills v. Maryland. And we submit that there is, in fact, more than a reasonable probability that the jury, when they went into that jury room and made their finding that aggravating circumstances, outweighed mitigating circumstances, they were relying on things that they never should have been considering and may not have relied on the things that they were allowed to rely on. And that reasonable probability renders this the error under the 6th, the 8th, and the 14th Amendments. Regarding the Brady issue, the issue of materiality goes to the impact of what this evidence meant to the state's case. And I think the issue of materiality is proven by the prosecutor's closing arguments when he specifically represents and states to the jury regarding Bernard Holloway and Kim Lamkin that their testimony was critical to corroborate and support the testimony of Sam Simmons. Absent their testimony and absent the evidence to impeach their testimony, the jury was able to then bolster the testimony of Sam Simmons, which the prosecutor repeatedly referenced throughout his closing as being unreliable and untrustworthy. And nobody believes Sam Simmons in this case. But that they should trust Eileen Sweeney, they should trust Bernard Holloway, and they should trust Kim Lamkin. And the prosecutor is the one who lied to the court, lied to defense counsel about the existence of these reports, because these reports were critical to impeaching his only witnesses that he had to make Sam Simmons in any way credible in order to obtain the guilty verdict. That's the materiality issue in this case. There are no further questions? Thank you, Your Honors.  Appreciate your advocacy on both sides. The case will be submitted.